RAFAEL M. BARALT, JR., and TRAVELERS FIRE INSURANCE COMPANY, Plaintiffs and Appellees, *v.* ENRIQUE BÁEZ GARCÍA and UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendants and Appellants.

No. 11181.  Argued March 1, 1955.—Decided March 30, 1955.

*Enrique Báez García pro se* and as counsel of the other party appellant. *José López Baralt* and *F. Fernández Cuyar* for appellees.

PER CURIAM.

Rafael M. Baralt, Jr., and Travelers Fire Insurance Company filed a complaint against Enrique Báez García and United States Fidelity Guarantee Company for damages sustained as the result of an automobile accident. The complaint was answered and after a trial on the merits the lower court rendered judgment ordering defendants to pay (1) to Travelers Fire Insurance Company the sum of $1,667; (2) to Rafael M. Baralt, Jr., the sum of $16,555.15; and (3) to the conjugal partnership of Rafael M. Baralt, Jr., and Luz María Soltero de Baralt, the sum of $5,799.14 plus costs and $500 for attorney's fees. The responsibility of the United States Fidelity and Guarantee Co., defendant herein, was limited in said judgment to $10,000 for personal damages and $1,000 for property damages, plus costs and attorney's fees.

Defendants appealed. In their first assignment of error they challenge, as excessive, the amount of $16,555.15 awarded to plaintiff Baralt, Jr., for damages.

In connection with the injuries sustained by Baralt, Jr., the trial court made the following findings of fact:

"9. In the collision previously described plaintiff, Rafael M. Baralt, Jr., sustained injuries on his body, including a severe contusion of the left side of his chest and a compound fracture in the patella of his right leg, which afterwards developed into a severe phlebitis which is extremely painful. He was hospitalzed in Dr. Pavía Fernández' Clinic in San Juan, from November 5, 1951, to November 25 of that same year, and afterwards he was confined at his home until the first part of January, 1952. He was attended by Dr. León Sheplan, who operated on his right leg and removed a certain bone from the knee, which normally serves to protect the knee against blows. Likewise the extensor tendon, which is the one that facilitates the raising of the leg and the thigh was torn. As a result, the right leg remained in such condition that now he cannot walk fast, run, climb, or make any extraordinary effort without pain.

"10. .      .      .      .      .      .      .

"11. Plaintiff Baralt paid Dr. León Sheplan the sum of $400 for the professional services rendered to him and his wife. It was necessary to use Mrs. Cedeño and Mrs. Valencia as special nurses, to whom he paid the sum of $982 in different payments. For physiotherapy treatments he paid the amount of $45. For crutches, medicines, and necessary drugstore expenses he paid about $70. For his hospitalization at Dr. Pavía's Clinic he paid $400.03, and for his wife's hospitalization in that same clinic he paid $378.01. In total, the previous payments amounted to $2,275.04.

"12. Plaintiff Baralt is a stockholder and works in a brokerage insurance company, J. M. Saldaña, Inc. During the last two or three years plaintiff's annual gross income fluctuated between nine and fourteen thousand dollars. As a result of the injuries suffered in that accident, Baralt had to stop work for at least two months, his income being thereby reduced in an amount which we reasonably estimate at $2,000."

And in its conclusions of law it decided:

"6. The fracture which plaintiff Baralt suffered in his leg, the operation and the subsequent treatment to which he was submitted, his hospitalization in the clinic and afterwards his

confinement at his home for more than two months, the intense mental and moral sufferings as a result of the whole situation, and the consequences of the injury, warrant the award of $16,555.15."

Appellants concede that the amount of $16,555.15 includes the sum of $1,555.15 paid out by Baralt Jr., for hospital, specialists, nurses, etc., and the sum of $2,000 which is the income he failed to receive because of his absence from work, both amounting to $3,555.15. The difference between the total amount awarded to Baralt Jr., as compensation, and the latter amount would be $13,000, which would represent the amount awarded for the mental and moral sufferings and the consequences of the injuries received by him. The true controversy centers around this amount of $13,000.

The injuries received by plaintiff Baralt consisted of a compound fracture of the right patella and a contusion of the left side of the chest. The patella is a "small bone in front of the knee joint. It is part of the joint." "The patella is part of the tendon in any fracture of the patella." The tendon was torn. Baralt, Jr., was submitted to an operation and a bone (patella) was removed and the tendon was sewed. When the patella is removed there is definitely a loss of the complete extension of the joint and a weakening of the knee when in an erect position or when climbing stairs. "When you walk normally it is not very important. But in a long walk or when climbing the stairs it is very important." With regard to the result of the operation, Dr. Sheplan, who was the physician who attended him, testified that: "He recovered quite well from the operation but he still has considerable atrophy in the muscles around the knee, especially of the quadriceps, with some weakness when climbing stairs and pain when he walks for a long time." As to the probable consequences of the fracture, the same witness testified that the most serious complication is arthritis in the knee, which sometimes develops in the

knee joint; that he is not actually suffering from arthritis; that it might follow, although it is only a possibility.

. Plaintiff's operation was on November 6, 1951. During the first ten days he suffered intense pain although not continuously because it was alleviated with morphine. During those first ten days the leg was placed in a cast, and when it was removed they found that phlebitis, which is an obstruction of the large veins of the foot and the leg, had developed. Phlebitis is painful. It disappeared in the course of several weeks without any treatment other than rest. Eighteen days after he was operated on, he was discharged from Dr. Pavía's Clinic and was moved to his home where Dr. Sheplan continued seeing him daily during two weeks, applying a treatment to bend the knee. Thereafter he visited him once or twice a week during the next six weeks. After the physiotherapy treatment the knee felt better and he could bend it about three fourths of the normal distance and although it was still swollen he was able to return to his work.

We have seen that the trial court, besides awarding plaintiff Baralt the expenses of the clinic, physician, nurses, etc., amounting to $1,555.15 and $2,000 as compensation for his loss of income from work, awarded him $13,000 more for mental and moral suffering and for the consequences of the injuries received by him, which make a total of $16,555.15, which is the specific amount claimed in the complaint.

The fixing of the amount of damages is a matter within the province of the trial court and the award granted should not be disturbed unless manifestly erroneous or grossly exaggerated. *Rodríguez* v. *American R.R. Co.*, 43 P.R.R. 472. Although a specific case can not be relied upon as a precedent of the amount allowed as damages, *Sánchez* v. *Sucesión J. Serrallés*, 53 P.R.R. 77; *Vázquez* v. *Laugier*, 60 P.R.R. 404, because each case must be determined on its own facts, *Meléndez* v. *Metro Taxicabs*,

68 P.R.R. 709, when examining our jurisprudence we have not found any case, under similar circumstances where the lower courts or this Court has granted such a high compensation as the one involved herein.[1]

In view of the nature of the injuries received by plaintiff-appellant, and taking into consideration all their consequences, the amount of $13,000 awarded for the injuries and physical suffering seems to us a little exaggerated. It should be reduced to $8,000, which is reasonable in our opinion. Added to the other items they make a total of $11,555.15, which is a reasonable compensation.

■ We likewise believe that appellants are right in alleging in their second assignment of error that the amount of $5,799.14 awarded for the injuries sustained by Mrs.

---

[1] In *Pepín* v. *Ready-Mix Concrete*, 70 P.R.R. 723, a young student, 16 years old, suffered a depressed skull fracture; he was operated on, remaining about 12 days in the hospital receiving extensive treatment; he was left with a dent in his skull, was completely disabled, showed epileptic syndromes and suffered vertigo, fainting and dizzy spells. As a consequence of the injury received he was unable to continue his studies or undertake heavy work. At the day of the trial he was still going to the hospital for observation and treatment. The sum of $5,000 awarded as compensation by the lower court was increased by us to $10,000.

In *Del Río* v. *García*, 71 P.R.R. 86, plaintiff, whose salary was then $200 monthly, was an employee of the Department of Finance of Puerto Rico. After the accident, plaintiff was taken, unconscious, to a clinic, where he spent about 80 days. He received several wounds in the head, severe contusions of the chest, a multiple knee fracture in the tibia and fibula bones and possibly a fracture at the base of the skull. Due to the injuries plaintiff walks with difficulty and is unable to climb stairs; has lost his memory; is unable to do the kind of work in which he had been engaged until then; shows permanent changes in his personality as a consequence of a cranial trauma, and he will not be able to work as an accountant, which is his profession. We said that under those circumstances, compensation of $8,000 for the injuries received and for his permanent disability, and $3,500 for his physical sufferings and mental anguish is not excessive.

In *Meléndez* v. *Metro Taxicabs*, *supra*, plaintiff suffered a compound fracture of the right leg, lower third, underwent three operations, and at the date of the trial, a year later, he was still hospitalized in the clinic. We sustained the judgment which awarded him $6,000 for his injuries, physical pain, and mental suffering.

Baralt is excessive. Of that amount $799.14 is for treatment expenses and there is no controversy about that item.

Mrs. Baralt suffered a bruise on her right knee and the fracture of three ribs. She also suffered a sprain where the ribs and the sternum meet. These injuries produced severe pain. She spent three weeks in a clinic. The fractures healed completely without causing plaintiff any damage of a permanent character. Under all the attendant circumstances we consider that an indemnity of $3,799.14 is just and reasonable.[2]

■ In their third assignment of error appellants allege that the trial court erred in not having dismissed the complaint as to plaintiff-appellant Baralt, Jr. Their contention is that he could not claim for his exclusive benefit an amount for damages belonging to the conjugal partnership.

They are not right. A cause of action for personal injuries to one of the spouses belongs to the community partnership, *Meléndez* v. *Iturrondo*, 71 P.R.R. 56; but it is incumbent on the husband as administrator of the conjugal property to bring the action. *Valiente & Cía.* v. *District Court*, 68 P.R.R. 491. This is what happened here. Baralt, Jr., brought in his name the action for damages sustained by him and by his wife. Of course, the compensation awarded belongs to the conjugal partnership.

■ The fourth assignment of error is as follows:

"The Superior Court of Puerto Rico, Arecibo Part, erred in not permitting defendant to establish that the accident was due to a defective condition in the highway by introducing evidence to show that in that same place innumerable cars had skidded during the same days when this accident took place."

---

[2] In *Martínez* v. *Báez*, 63 P.R.R. 751, plaintiff suffered a large and heavy bruise on his left side, which produced a noticeable condition of a traumatic shock with a fracture of the tenth left rib, dry pleurisy underneath the trauma in said left side, and light wounds and lacerations in the thighs and arms. On appeal we considered excessive the sum of $1,100 granted by the trial court and we reduced it to $500.

The parties are in agreement as to the defective condition of the highway where the accident occurred. The case law cited by appellants sustains that in determining whether or not there was negligence the condition of the highway must be considered.[3] This Court has decided that the fact that a motor vehicle skidded does not by itself establish negligence. *Rodríguez* v. *White Star Bus Line*, 54 P.R.R. 294, 305. The fact, however, that the automobile skidded is not necessarily any defense for the motorist. 1 Blashfield, 680, 681. Every driver should exercise unusual care to keep the car under control on a slippery road, so as to avoid hitting another vehicle. See 58 A.L.R. 278. Section 15(*a*), Automobile and Traffic Act, as amended.[4]

In this case the trial court concluded, supported by the evidence in the record, that defendant's vehicle "was running at a high speed, about 50 miles per hour, along the right-hand side of the highway, and that, due to that speed and the slippery condition of the highway, because it was wet, the automobile started to skid, its rear part swerving toward the center of the highway and then rapidly making a complete turn and violently colliding, on the left-hand side of the highway (looking toward Arecibo), with the automobile which Baralt was driving, . . ." Obviously the speed at which appellant's vehicle was going, rather than the slippery condition of the highway, caused the skidding.

---

[3] 1 Blashfield 681; 3–4 Huddy, Cyclopedia 121, 122; *Brinegar* v. *Greene*, 117 F. 2d 316, among others.

[4] Said Section, as amended by Act No. 156 of April 26, 1951, (Sess. Laws, p. 368), provides:

"Section 15.—(*a*) The speed of a motor vehicle shall at all times be regulated with due care, and with due regard to the width, amount of traffic, use, and condition of the highway. No person shall drive at a speed higher than that which may permit him to exercise due control of the vehicle and to reduce the speed, or to stop when necessary in order to avoid knocking down a person or to collide with any other vehicle or transportation device on the road or entering same, in compliance with the requirements of law and with the duty of exercising the due care to which drivers and other persons using the road are subject."

Once appellant's negligence in driving his vehicle at a high speed in that place was established, we do not see how evidence, tending to show that in said place innumerable cars had skidded during the same days of appellant's accident, could have favored him, nor that it was relevant in any way. Nor was the fourth error committed.

The judgment appealed from will be modified to the effect of reducing the amount of the compensation awarded to plaintiff Baralt, Jr., to $11,555.15 and the amount for damages awarded to his wife to $3,799.14, and as modified the judgment is affirmed.